Johnson, J.
delivered the opinion of the Court.
The exceptions taken to the instructions given to the jury by the presiding Judge, which are made the grounds of this motion, appear to have been founded, for the most part, on a misconception of what those instruction were ; as they do not necessarily arise out of the report made to this Court. I shall, therefore, without regard to the order in which they are stated in the brief, consider only those questions which arise out of the case as presented to us here.
They are, 1st. whether Samuel Tomkins was, or was not, of sound disposing mind at the time of the execution of his supposed will: And, 2d. whether the paper propounded was, in point of fact, the will of Samuel Tomkins.
However inferior the capacity, or weak the understanding, whether it arise from natural, or adventitious causes, if a man possess mind sufficient to transact the common business of life, there is no question but that he may make a will: and the only difficulty which cases of this kind present, is to ascertain the existence or absence of this state of the mind. The concurring opinion of the Judge and the jury, who tried this cause would, even in a doubtful case, be regarded as decisive of the affirmative of the first proposition : and whether we regard the intrinsic evidence furnished by the provisions of the will itself, or the circumstances attending its execution, the same conclusion will result.
The will provides for his widow to an extent, which she hex-self, upon being consulted, thought adequate, or rather at *94 which she expressed no dissatisfaction ; and after having given specific legacies to several of his near relations, he gives the residue of his estate to his two illegimate children, having no children by his marriage : and although I am too much a stranger to bis connexions and relations, to pronounce that those provided for had the highest claims upon him, and that his will is precisely that which the wisest man would have made ; yet allowing for the caprice, which even a wise man has a right to indulge in the disposition of his property, I have no hesitation in pronouncing, that there is nothing in it eccentric or unreasonable. This in itself is not, it is true, conclusive of his sanity ; but it is a circumstance intitled to weight in a doubtful question.
Of the same character are the circumstances attending the execution. James Tomkins, one of the executors, was sent for by the testator, and, on his own suggestion, to write his will; and after a private conference, professedly with a view to instructions, he prepared a will. This was done on Wednesday night. On thursday night, after it was brought to him for execution, James Tomkins proposed to read it 'to him ; but he requested that the reading might be dispensed with, and went on to inquire particularly, whether the will provided for every specific legacy which it is found to contain, naming the legatee, and the particular property given, and closed the inquiry, by asking whether the residue of the estate had been disposed of as directed: and, on being answered in the affirmative, he signed the will.
The testator is said to have been, when in health, a man of vigorous understanding; and although the proof is very abundant, that his mind had been greatly impaired by disease, his minute recollection of instructions given for preparing his will twenty-four hours before, is wholly inconsistent with that imbecility and alienation of mind, which, according to the rule, incapacitated him for making a will.
Opposed to this host of circumstances, there is nothing but the opinion of some of the witnesses, including, indeed, his attending physicians, and nurse, but unaided by any one circumstance'to show, that when his attention was aroused, or called to the subject of the will, his mind did not run in the same even and reasonable channel: and whatever weight these opinions might derive from the character and intelligence of the witnesses, *95 they are, in my judgment, decidedly out-weighed by the circumstances.
The second proposition embraces, 1st. a supposed departure from the instructions, in relation to the devise to James Tom-kins, who wrote the will, under the designation of “ my land adjoining John Holsonbake and, 2dly, and principally, the entire absence of any act of the testator disposing of'the residuary estate.
The testator, it seems, owned a tract of land adjoining John Holsonbake, which he had purchased of a man, of the name of Jacob Holsonbake, and which he distinguished by his name. He also owned two other small tracts in the same neighborhood ; but the witnesses seem to differ as to the fact,’ whether these last do, or do not, in fact, adjoin the lands of John Holsonbake. The instructions for writing the will, as deduced from the interrogatories put by the testator, at the time of the execution, to James Tomkins, who wrote it, were, that he should give to himself “ the Holsonbake tractand the supposed departure from the instructions consists in the assumption that the devise covers also the other two tracts.
In a contest about the distribution of . the estate under the provisions of the will, it might well become a question, whether all, or only one of the tracts of land, were included in the devise ; but in a question as to the admission of the will to probate, an acknowledged mistake as to one particular, would not necessarily destroy all the other provisions : and regarding it as an evidence of fraud and imposition, as it is intended to be used here, it would only amount to a circumstance, to count for what it was worth. But the fact of its being a departure is not made out; for although the devise differs, in terms, from what the supposed instructions were, yet from any thing that now appears, they are, in substance, the same. “ The Holsonbake tract” lay adjoining John Holsonbake, and it does not appear, whether the other two did, or did not; but if they did, I am not prepared to say, that parol evidence would he admissible, to identify the particular tract intended to be described by the terms used in the devise.
The second branch of this proposition involves a question of more novelty and interest. There is an entire absence of any proof at all of instructions from the testator, as to the disposi- *96 tiou of the residuum of his estate, which constituted a principal part of it. The proof furnished by those, who contend for the establishment of the will is, that the testator neither read, nor heard it read ; but that he contented himself with inquiring of James Tomkins, whether he had disposed of this part of his estate as he had directed, and signed it upon his answering- in the affirmative. The question then is, whether these circumstances constitute sufficient evidence of his assent to it. I think not. A will is defined tobe the declaration of a man’s mind, as to the manner in which he would have his estate disposed of after his death. The usual, and almost the only mode in which assent to a writing is manifested, is by subscribing it; and, in the absence of any other proof, that would be sufficient evidence of assent to a will, as well as to any written contract. This constitutes, indeed, the highest evidence : but it is not conclusive. According to the definition, a will ought to express the mind of the testator; and that cannot be his mind, or will, of which he is ignorant.
The case of Billinghurst v. Vickers, 1 Phillimore, 187, furnishes some of the rules, by which we are to be governed in the inquiry, as to the assent of the testator. In that case, Sir John Nieholl lays it down, as a principle well established, that where capacity is in any degree doubtful at the time of the execution, there must be proof of instructions, or reading over; and that the presumption is strong against an act, done by the agency of the party to be benefited: and although the Court will not presume-fraud, it will require strong proof of intention.
The evidence in the case under consideration, is very abundant, that the mental faculties of the testator were much impaired ; and of consequence, impositions might have been practiced upon him with more facility, than when in its full strength and vigour: and although the interest which James Tomkins took, as guardian of the illegitimate children, was, perhaps, inconsiderable ; he falls within the suspicions, on which the rule is founded. According to the rule, he was bound to furnish proof of intention, and here was not only the absence of proof of intention, but direct proof, that the testator died without knowing the contents of the residuary clause of his will, except so far as might be inferred from the declarations of James Tomkins, that they were according to his instructions : and this, so far from consti *97 tuting proof of his own will, proves only that James Tomkins declared it to be such.
Vide Billing-hurst v. Vick-ers, 1 Philli-more 187. Wood® Wood lb. 357. and Barton v. Robins. 3 Id. 455, note.
Warblaw, and Bauskett, for the motion.
Thompson, contra.
The whole of the residuum is given to his illegitimate children ; and this circumstance, it has been insisted, constituted a very powerful motive for the testator’s not wishing it to be promulgated : nor, indeed, could James Tomkins have any adequate motive for inserting such a provision, inconsistently with the will of the testator. The counsel, too, have conceded to him a character wholly above suspicion; and the whole case taken together looks so like what ought reasonably to be expected, that if I possessed any discretion over the rule, I should incline to bend it to the occasion. Bui the signature of the testatoris not conclusive of his assent to the will; and the proof is, that in this respect, he was ignorant of the contents. It could not, therefore, be his will; and the motion for a new trial must, therefore, prevail.
It will readily be perceived, that a question may arise in the further progress of this case, whether although the will may be void in respect to the residuary clause, it will not stand as to the others. It would seem, according to some of the English cases, that it would; but this question was rather hinted at, than discussed in the course of the argument: and it is thought better to leave it open, that it may be further investigated, if it should become necessary to the ultimate disposition of the cause.
Motion granted.